1  Christopher Wimmer (SBN 263275)
   Peter Roldan (SBN 227067)
2  Jason Fisher (SBN 289085)
   EMERGENT LLP
3  535 Mission Street, 14th Floor
   San Francisco, California 94105
4  p: 415/894-9284
   f: 415/276-8929
5  e: chris@emergent.law
   e: peter@emergent.law
6  e: jason@emergent.law

7  Seth Yohalem (*pro hac vice* pending)
   WASKOWSKI JOHNSON YOHALEM LLP
8  954 W. Washington Boulevard, Suite 720
   Chicago, Illinois 60607
9  p: 312/278-3156
   f: 312/690-4641
10 e: syohalem@wjylegal.com

11 Attorneys for Plaintiff
   SATENIK DOLUNTS OTTO
12

13                UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                     SAN FRANCISCO DIVISION

16

17 | SATENIK DOLUNTS OTTO, on behalf of     | Case No.
   | herself and others similarly situated,  |
18 |                                         | **COLLECTIVE ACTION COMPLAINT**
   |          Plaintiff,                     |
19 |                                         | **DEMAND FOR JURY TRIAL**
   | v.                                      |
20 |                                         |
   | BANK OF THE WEST,                       |
21 |                                         |
   |          Defendant.                     |
22

23

24

25

26

27

28

EMERGENT

COMPLAINT

Plaintiff Satenik Dolunts Otto ("Plaintiff"), by and through her attorneys, Waskowski Johnson Yohalem LLP and Emergent LLP, hereby complains and alleges as follows against Defendant Bank of the West and Does 1-50 (Bank of the West and Does 1-50 shall be referred to collectively as the "Bank"):

## I.  INTRODUCTION

1.      This is a collective action brought under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) to recover wages and liquidated damages owed to Plaintiff and other similarly-situated non-exempt employees of the Bank, who the Bank required to perform work for which they were not compensated properly, as shown in electronic bank transaction records created, maintained, and easily searchable by the Bank.

2.      Plaintiff worked as a teller at the Cody, Wyoming branch of the Bank and was assigned to work 40 hours most weeks.

3.      However, the Bank repeatedly forced Plaintiff and her co-workers to perform work for it outside of, and in addition to, their normal working hours without paying them proper compensation.  For example, the Bank regularly required Plaintiff and her co-workers to service customers during meal breaks and after closing time.  The Bank did not properly pay Plaintiff (or, upon information and belief, her co-workers) for such overtime.  Instead, the Bank required Plaintiff and her co-workers to record time as if they never worked during meal breaks or after hours.  Then, based exclusively on these inaccurate records, the Bank calculated the wages it contended she, and its other non-exempt employees, were due.   As a result, the Bank did not promptly pay Plaintiff for the overtime she actually worked and, upon information and belief, has systematically failed to compensate properly its other, similarly-situated, non-exempt employees who also performed retail banking transactions.

4.      In failing to pay promptly Plaintiff, and, upon information and belief, similarly-situated, non-exempt employees the wages to which they were entitled, the Bank has willfully ignored sophisticated software readily at its disposal that shows conclusively that these employees performed work not properly recorded on their time

records.  The Bank, like most banks, maintains detailed electronic records, tracking each retail bank transaction its employees perform, including the date and time of each such transaction.  Thus, when Plaintiff and other Bank employees do work "off the clock," there are still easily searchable electronic records within the Bank's control detailing that work.  If the Bank used those records, it could ensure that its employees were paid the wages they are owed.   The Bank willfully ignores this data, however, when determining the wages due to its employees, relying exclusively on its rudimentary time-tracking system, which is ripe for inaccuracy and abuse, as reflected in Plaintiff's time records.

5.      When Plaintiff complained about these practices to her manager, the Bank terminated her employment.  Following her termination, Plaintiff demanded an explanation for why she was fired.

6.      At that point, the Bank offered her what it claimed was the compensation she was owed and asked her to sign an "acknowledgment form," agreeing to the Bank's calculations.  The Bank did not use its electronic records to determine the amount of time Plaintiff worked.  Nor did it offer to pay Plaintiff the liquidated damages she was due under the FLSA.  Plaintiff did not sign the "acknowledgment form."  The Bank then sent Plaintiff a check for the same amount it had previously offered her, which Plaintiff cashed.  However, the Bank still has not paid Plaintiff the liquidated damages she is owed or provided her with a detailed calculation using electronic records showing the full amount of overtime she worked.  The Bank also has never offered an explanation for why Plaintiff was terminated.

7.      Plaintiff brings this FLSA collective action to require the Bank to use the records readily available to it to calculate and pay the amounts she and the Bank's other similarly-situated employees are owed under the FLSA, including both unpaid wages and liquidated damages.

///

///

///

COMPLAINT

EMERGENT

## II.    FACTUAL BACKGROUND

### A.    Parties

8.    Plaintiff Satenik Dolunts Otto is a resident of Cody, Wyoming.

9.    Defendant Bank of the West is a California corporation with its corporate headquarters located in San Francisco, California.

10.    Plaintiff does not know the true names and capacities of those Defendants sued herein as DOES 1 through 50, inclusive, and therefore sues those Defendants using such fictitious names.

11.    Plaintiff will amend this Complaint to allege the true names and capacities of the Defendants sued herein as DOES 1 through 50 whenever they are ascertained.

12.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants sued herein as DOES 1 through 50, inclusive, is in some manner legally responsible for the wrongful acts and/or omissions alleged herein.

13.    Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants acted in concert with each and every other Defendant, intended to and did participate in the events, acts, practices, and courses of conduct alleged herein, and proximately caused damage and injury thereby to her as alleged herein.

14.    At all times herein mentioned, each of Defendants, including DOES 1-50 and Bank of the West, were agents, employees, supervisors, employers, alter egos, and/or joint venturers of these Defendants, and were acting individually in the course and scope of such relationship and/or as integrated enterprises and/or joint employers, with knowledge and/or consent of the remaining Defendants.

### B.    Jurisdiction and Venue

15.    Upon information and belief, and based on publicly available information, the Bank has over 600 branches throughout the Western and Midwestern United States and is regulated by the Federal Deposit Insurance Commission.

///

///

COMPLAINT

16.     Upon information and belief, the Bank makes it corporate level-decisions, such as the decision to ignore its electronic transaction records when calculating the amounts owed to its employees, out of its San Francisco headquarters.

17.     Upon information and belief, the Bank made all final decisions regarding Plaintiff's employment and compensation out of its San Francisco headquarters.

18.     Venue is thus proper under 28 U.S.C. §1391, because the Bank resides within this judicial district and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

19.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**C.     The Bank's Violation of FLSA**

      1.     <u>The Bank Maintains Detailed Records of All Retail Banking Transactions Plaintiff and Its Other Employees Perform</u>

20.     The Bank hired Plaintiff to work as a teller at its Cody Branch in March of 2016. Her offer letter is attached as <u>Exhibit A</u>.

21.     At the start of her employment, the Bank required Plaintiff to undergo training on using and accessing its computer systems, and complying with all internal security policies, so that she would be able to perform retail banking transactions (*i.e.* accepting deposits, cashing checks, dispensing cash, etc.)

22.     The training was provided to Plaintiff electronically through a software program that appeared to be standardized for all Bank employees whose job responsibilities involved performing retail banking transactions.

23.     Upon information and belief, all of the Bank's employees who perform retail banking transactions are required to undergo this or substantially similar training.

24.     As part of its electronic training, the Bank directed Plaintiff on how to access and use its software system properly, so that she would be able to process retail banking transactions for the Bank's customers.

25.     Following her training, Plaintiff began working as a teller.

COMPLAINT

EMERGENT

26.     The Bank provided Plaintiff with access to a cash drawer and a computer login that provided her access its central computer system.  Each time she performed a retail banking transaction, as per her standardized training, she was required to log into the Bank's centralized computer system and enter the details of the transaction she was processing.

27.     Once Plaintiff had entered all such details, the Bank's computer system allowed her to complete the retail banking transaction.

28.     Upon information and belief, the Bank requires all of its employees who perform such retail banking transactions to log into the same centralized computer system before transactions may be completed.

29.     By requiring its employees to log into and use its centralized computer system, the Bank captures and maintains the key details of each retail banking transaction, including, but not limited to, the customer's name and account number, the identification details of the employee performing the transaction, the date and time of the transaction, the branch location at which the transaction took place, the nature of the transaction, and the amount of the transaction.

30.     The Bank uses this information for two purposes.

31.     First, it uses this transaction data to monitor employee performance and customer satisfaction.

32.     For example, the Bank regularly surveys its customers.  If a customer reports dissatisfaction, then, using its electronic transaction records, the Bank can determine which employees serviced the dissatisfied customer and take whatever actions it deems appropriate.

33.     Second, the Bank uses its transaction data for security reasons, such as to determine whether there is any suspicious activity associated with an employee or customer.

34.     Upon information and belief, this information is regularly maintained and easily searchable by the Bank for both of these purposes.

COMPLAINT

35.     In addition to maintaining detailed electronic records of each retail bank transaction, as an additional security measure, the Bank also maintains video surveillance footage of each retail bank transaction its employees perform.

2.     The Bank Forces Plaintiff and Her Co-Workers to Work "Off the Clock" Overtime That Is Reflected in Its Retail Banking Transaction Records

36.     While the Bank uses a sophisticated tracking system for each banking transaction for customer service and security purposes, the Bank ignores this data when it comes to compensating its employees.

37.     Instead, Plaintiff and other employees were, and are, required to input their time worked into a software program manually.  This may be done either before or after the work was done.

38.     The branch manager then reviews the reported time worked and determines if it is acceptable.

39.     Upon information and belief, at no point in the time-keeping process does the Bank use its retail banking transaction records to verify that its time records are accurate.

40.     By structuring its time-keeping in this manner, the Bank deliberately fails to pay its employees properly for time they work "off the clock."

41.     Although the Bank nominally hired Plaintiff to work 30 hours per week, because of labor shortages, she was expected and required to work 40 hours per week "on the clock."

42.     Each day, she was required to log into the Bank's time-tracking software and enter records that reflected her "clocking in" at 8:30 a.m., "clocking out" for lunch at 12:00 p.m., "clocking in" from lunch at 12:30 p.m., and "clocking out" at 5:00 p.m.

43.     Plaintiff's supervisor, Kellye Schmidt, who the Bank no longer employs, explained to her that the Bank would not pay for overtime and that recording these times was mandatory.

COMPLAINT

EMERGENT

44.     However, Ms. Schmidt routinely required Plaintiff and her co-workers to work for additional periods of time for which they were not compensated.

45.     For example, on several occasions when customers were in line at the time of closing or before Plaintiff's lunch break, Ms. Schmidt required Plaintiff and, oftentimes, her co-workers to remain after hours to ensure that all of the Bank's customers' needs were attended to.

46.     Ms. Schmidt forbade Plaintiff and her co-workers from recording this additional time using the Bank's time-tracking software.

47.     The Bank, in turn, failed to compensate Plaintiff for the overtime she worked when it paid her on her regular pay days.

48.     Upon information and belief, this is because the Bank takes no steps whatsoever to verify whether the time worked that is recorded on its time-tracking system is consistent with the retail bank transaction records it separately maintains.

49.     In discussions with her co-workers, Plaintiff confirmed that they too were not compensated for time worked "off the clock."

50.     Upon information and belief, the policies and practices described above are not unique to Plaintiff's branch, but instead are employed at all of the Bank's branches across the United States: The Bank does not pay any of its employees for time they work that is not reflected on its time-tracking software when it issues its regular payroll disbursements, and does not use its transaction-tracking software to verify and supplement its time records.

51.     Plaintiff routinely complained to Ms. Schmidt that the Bank's failure to compensate her for time worked "off the clock" was unlawful.

52.     Ms. Schmidt routinely dismissed such concerns.

53.     Eventually, the Bank terminated Plaintiff's employment in late May 2016.

54.     After her termination, in a detailed email, Plaintiff set forth for the Bank's upper management various issues she had with the Bank, including its failure to pay her overtime, and demanded an explanation for why she was terminated.

COMPLAINT

55.     Following her complaints, a member of the Bank's human relations department called Plaintiff and asked for her recollection of the amount of overtime she had worked.

56.     Plaintiff made her best estimate.

57.     The Bank then offered to pay Plaintiff the overtime she thought she had worked, if Plaintiff would sign an acknowledgment form effectively disclaiming any right to additional compensation for this time.  That email is attached as <u>Exhibit B</u>.

58.     When Plaintiff refused to sign the acknowledgment form, the Bank still sent her a check for the same amount, which Plaintiff cashed.

59.     However, the Bank never used its electronic transaction records to determine the wages due to Plaintiff.

60.     The Bank also never tendered to Plaintiff the liquidated damages to which she was entitled under the FLSA for its failure to pay her for overtime on her regular pay days.

61.     Nor did the Bank ever explain to Plaintiff why she was fired.  Plaintiff still does not know why the Bank terminated her employment.

### 3.     Collective Action Allegations

62.      Plaintiff brings this action on behalf of herself and all similarly-situated individuals. The proposed FLSA collective class (the "FLSA Collective") is defined as follows:

All current and former employees of Bank of the West who: (1) were designated as non-exempt employees by the Bank; (2)  performed retail banking transactions for the Bank outside of the hours reflected on their time records during the three years preceding the filing of this Complaint; and (3) were not paid either (a) 1 ½ times their usual rate of compensation by the Bank for all overtime worked on their next regularly scheduled payday, or (b) 1 ½ times their usual rate of compensation by the Bank for all overtime worked plus an equal amount of liquidated damages at a later time.

COMPLAINT

63. Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b). Plaintiff's signed consent form is attached as <u>Exhibit C.</u>

64. As this case proceeds, it is likely that other individuals will file consent forms and join as "opt-in" plaintiffs.

65. As described in the preceding paragraphs, during the applicable statutory period, Plaintiff and members of the proposed FLSA Collective routinely worked in excess of 40 hours in a workweek without receiving compensation for the overtime they worked.

66. The Bank willfully engaged in a pattern of violating the FLSA by failing to pay its non-exempt employees the overtime compensation to which they were entitled, despite knowing that its electronic banking records would show that Plaintiff and other non-exempt workers worked in excess of 40 hours in a workweek and were performing non-exempt work.

67. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

68. Defendants are liable under the FLSA for failing properly to compensate Plaintiff and the FLSA Collective for overtime. Accordingly, notice of this action should be sent to the FLSA Collective. There are numerous similarly-situated current and former employees of the Bank who have suffered from Defendants' practices and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join it. Those similarly-situated employees are known to the Bank and are readily identifiable through its records.

69. Questions of law and fact common to the FLSA Collective as a whole include, but are not limited to, the following:

    a. Whether the Bank has electronic records showing that Plaintiff and members of the FLSA Collective performed retail bank transactions outside of their recorded time;

    b. Whether "off-the-clock" retail bank transactions should be included in "hours worked" under the FLSA;

COMPLAINT

c. Whether the Bank's failure to pay overtime compensation for retail bank transactions that were not reflected on its time-tracking software at its employees' next regular paydays constitutes a violation of the FLSA;

d. Whether the policies and practices of the Bank that caused its failure to pay overtime and minimum wage for retail banking transactions not reflected on the Bank's time-tracking software violates the applicable provisions of the FLSA;

e. Whether the Bank's policy and practice of maintaining a time-keeping system that ignores electronic transaction records showing time actually worked violates the applicable provisions of the FLSA;

f. Whether the Bank's failure to pay overtime to Plaintiff and the FLSA Collective was willful within the meaning of the FLSA;

g. Whether the Bank failed, and continues to fail, to make accurate records of actual time worked by Plaintiff and the FLSA Collective;

h. Whether the Bank failed, and continues to fail, to report all actual time worked by Plaintiff and the FLSA Collective; and

i. Whether the Bank failed, and continues to fail, to preserve accurate records of actual time worked by Plaintiff and the FLSA Collective.

70. The claim for violation of the FLSA is brought pursuant to 29 U.S.C. §216(b) for all claims Plaintiff asserts on behalf of herself and the FLSA Collective, because Plaintiff's claims are similar to the claims of the members of the prospective class.

71. Plaintiff and the FLSA Collective are similarly situated, have substantially similar contract agreements and pay provisions, and are subject to the Bank's common practice, policy, or plan of failing to keep accurate records and failing to pay overtime in violation of the FLSA.

72. Plaintiff will fairly and adequately represent and protect the interests of the members of the FLSA Collective. Plaintiffs has retained counsel competent and

COMPLAINT

experienced in complex class actions, and disputes arising under the FLSA and other labor and employment laws.

73.    The names and addresses of the members of the FLSA Collective are available from the Bank and can be readily determined by comparing the Bank's payroll and retail bank transaction records.  To the extent required by law, notice will be provided to the prospective members of the FLSA Collective via first class mail, email, and by use of techniques in a form of notice that has been used customarily in collective actions, subject to court approval.

**III.    CAUSES OF ACTION**

**First Cause of Action**

**(Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.)**

74.    Plaintiff re-alleges and incorporates by reference herein all allegations previously made in paragraphs 1 -73 above.

75.    At all relevant times, Plaintiff and the FLSA Collective were "engaged in commerce" or "employed by an enterprise engaged in commerce" within the meaning of the FLSA.

76.    At all relevant times, the Bank employed Plaintiff and continues to employ the FLSA Collective, within the definition of the FLSA, 29 U.S.C. §203(e)(1).

77.    At all times relevant to this Complaint, the Bank has had gross operating revenues in excess of $500,000.00.

78.    Plaintiff hereby consents to sue under the FLSA, 29 U.S.C. §216(b).  Her consent to sue is attached hereto as <u>Exhibit C</u> and incorporated herein by reference. Further consents to sue will be submitted to the Court in due course.

79.    The FLSA requires each covered employer, such as the Bank, to compensate all non-exempt employees at a rate of not less than 1½ times the regular rate of pay for work performed in excess of 40 hours in a workweek.

80.    Plaintiff and the FLSA Collective were, or are, paid hourly and are not exempt from the right to receive overtime pay under the FLSA.

COMPLAINT

81.     Plaintiff and the FLSA Collective were, or are, entitled to be paid overtime compensation for all overtime worked at their next regular payday.

82.     At all times relevant to this Complaint, the Bank had a policy and practice of failing to pay overtime to employees who performed retail banking transactions during times that were not reflected on its time-tracking software on their next regular payday.

83.     As a result of the Bank's failure to compensate its employees, including Plaintiff and the FLSA Collective, at a rate not less than 1½ times the regular rate of pay for retail banking transactions not reflected on its time-tracking software on their next regular payday, the Bank has violated, and continues to violate, the FLSA, 29 U.S.C. §§201 et. seq., including 29 U.S.C. §207(a)(1) and §215(a).

84.     The Bank's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. §255(a).

85.     Plaintiff and the FLSA Collective are entitled to damages in the amount of their respective unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. §216(b), and other such legal and equitable relief as the Court deems appropriate.

86.     Plaintiff on behalf of herself and the FLSA Collective requests recovery of her attorneys' fees and costs associated with this cause of action, as provided by 29 U.S.C. §216(b).

## IV.   PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the FLSA Collective, prays for the following relief:

a.   Designation of this action as a collective action on behalf of the Plaintiff and the class she seeks to represent pursuant to the asserted Fair Labor Standards Act claims and a prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly-situated members of the FLSA opt-in class apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. §216(b),

COMPLAINT

and equitable tolling of the statute of limitations from the date of this Complaint's filing until the expiration of the deadline for filing consent to sue forms pursuant to 29 U.S.C. §216(b);

b. The court's facilitation of notice to the FLSA Collective, including through discovery of the Bank's records;

c. A judgment that the practices complained of herein are unlawful under the FLSA, 29 U.S.C. §201 et seq.;

d. An injunction against the Bank and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

e. An award of damages, including unpaid overtime and liquidated damages, to be paid by the Bank;

f. Designation of Plaintiff Satenik Dolunts Otto as the class representative;

g. Attorneys' fees and costs; and

h. Any other relief that this court deems just.

Dated: March 16, 2017

Respectfully submitted,

By: _____
        Christopher Wimmer
Peter Roldan
Jason Fisher
EMERGENT LLP

Seth Yohalem
WASKOWSKI JOHNSON YOHALEM LLP

Attorneys for Plaintiff
SATENIK DOLUNTS OTTO

COMPLAINT

EMERGENT

# DEMAND FOR JURY TRIAL

Plaintiff Satenik Dolunts Otto, on behalf of herself and all others similarly situated, hereby demands a trial by jury.

Dated: March 16, 2017

Respectfully submitted,

By: _____
              Christopher Wimmer

EMERGENT LLP

Attorneys for Plaintiff
SATENIK DOLUNTS OTTO